SENIOR REHABILITATION
AND SKILLED NURSING
CENTER, Petitioner

v.

HEALTH & HUMAN SERVICES,
Respondent.

No. 10–60241
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 2010.

Paul A. Romano, Esq., Law Office of Paul A. Romano, Victoria, TX, Edmond Dante Anderson, III, Esq., Assistant Regional Counsel, U.S. Department of Health & Human Services, Office of the General Counsel Region VI, Dallas, TX, for Petitioner.

Henry Goldberg, U.S. Department of Health & Human Services, Office of the General Counsel, Baltimore, MD, for Respondent.

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM: *

In this petition for review from the Departmental Appeals Board ("DAB") of the

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be

published and is not precedent except under

United States Department of Health and Human Services, the petitioner, Senior Rehabilitation and Skilled Nursing Center ("Senior Rehabilitation"), challenges the DAB's final decision that Senior Rehabilitation did not substantially comply with certain Medicare and Medicaid regulations, and the DAB's imposition of a $ 35,200 civil monetary penalty. For the following reasons, we reject Senior Rehabilitation's challenges and **DISMISS** the petition for review.

## FACTS AND PROCEEDINGS

Senior Rehabilitation is a nursing home that participates in the Medicare program. On July 12, 2008, a designated state surveying agency completed an incident and complaint investigation of Senior Rehabilitation on behalf of the Centers for Medicare and Medicaid Services (CMS). CMS concluded that Senior Rehabilitation was not in substantial compliance with certain Medicaid and Medicare regulations and imposed a civil monetary penalty of $800 per day for a period of 44 days, totaling $35,200.

Senior Rehabilitation requested a hearing before an Administrative Law Judge ("ALJ") regarding CMS's determination of substantial noncompliance. CMS moved for summary judgment, which the ALJ granted, upholding the $35,200 fine. The ALJ found that (1) Senior Rehabilitation had not substantially complied with the physician consultation requirement in 42 C.F.R. § 483.10(b)(11) because it failed to consult a resident's physician immediately after she experienced a significant change in health status and (2) with respect to the same resident, Senior Rehabilitation had not substantially complied with the quality of care standard for pressure sores set forth in 42 C.F.R. § 483.25(c)(2). Senior Rehabilitation appealed the ALJ's grant of summary judgment to the DAB, and the DAB affirmed. Senior Rehabilitation now seeks review in this court.

## DISCUSSION

### A. Standard of Review

This court has jurisdiction to review the grant of summary judgment and imposition of a civil monetary penalty against Senior Rehabilitation pursuant to 42 U.S.C. § 1320a–7a(e). Review is conducted according to the deferential standards of the Administrative Procedures Act ("APA"), which authorizes the court to "set aside agency action, findings, and conclusions found to be," in relevant part, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "unsupported by substantial evidence." [1] 5 U.S.C. § 706(2)(A),(E); *Cedar Lake Nursing Home v. U.S. Dep't of Health & Human Servs.*, 619 F.3d 453, 457 (5th Cir.2010). "The findings of the Secretary with respect to questions of fact, if supported by substantial evidence in the record, shall be conclusive." 42 U.S.C. § 1320a–7a(e). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir.2000). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (footnote omitted).

the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. Although Senior Rehabilitation argues that this court's review is *de novo* because it appeals a grant of summary judgment, this court applies the same heightened deference standard to an appeal from an entry of summary judgment. *Cedar Lake,* 619 F.3d at 457.

## B. Summary Judgment

### i. *Physician Consultation, 42 C.F.R. § 483.10(b)(11)*

The ALJ determined that Senior Rehabilitation was not in substantial compliance with the physician consultation requirement in 42 C.F.R. § 483.10(b)(11), which requires a nursing facility to immediately consult with a resident's physician following:

[a] significant change in the resident's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical complications); [or] [a] need to alter treatment significantly (i.e., a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment).

42 C.F.R. § 483.10(b)(11)(i)(B)–(C). A facility substantially complies with a participation requirement where "any identified deficiencies pose no greater risk to resident health or safety than the potential for causing minimal harm." 42 C.F.R. § 488.301.

■ The undisputed evidence shows that Resident 26 ("R 26") was a 72–year-old woman diagnosed with organic brain stroke, dysphagia, hypertension, and a history of stroke. She was unable to speak and was completely dependent on staff for all activities of daily living. Between March and April 2008, R 26 experienced a weight loss of nearly ten percent of her body weight—from 93.6 lbs to 84.6 lbs. In an April 2008 progress note, Senior Rehabilitation's consultant dietician described R 26 as "at risk" because of her significant weight loss and observed that R 26 had a pressure sore on her back and a stage IV coccyx wound. The dietician made several recommendations, including an increase in R 26's nutritional intake. Senior Rehabilitation waited over three weeks before informing R 26's physician of the change in R 26's health status and the dietician's recommendations.

Relying upon the foregoing facts, the DAB concluded that Senior Rehabilitation was not in substantial compliance because the undisputed facts established that the facility did not immediately consult R 26's attending physician following a significant change in her condition and that this deficiency posed a greater than minimal risk to R 26's health.

On appeal, Senior Rehabilitation does not assert that R 26 did not experience a significant change in her health status or that it consulted her physician immediately. Instead, Senior Rehabilitation argues that a sworn statement by William George, M.D. ("Dr. George"), R 26's treating physician, that the "facility in [his] opinion ... kept [him] reasonably and timely informed about [R 26's] care needs and changes in health condition" creates an issue of material fact. Accepting this statement as true, the DAB held that Dr. George's statements were "conclusions reflecting the doctor's individual opinion, not evidence of material facts under the governing regulation," because they were not relevant to whether R 26's substantial weight loss amounted to a significant change in her health status or to whether Senior Rehabilitation immediately consulted R 26's physician regarding this change.

Senior Rehabilitation also contends that statements in affidavits by Dr. George and by Dana Banks, R.N., the director of nursing at Senior Rehabilitation, that R 26 was receiving adequate nutrition show that Senior Rehabilitation's failure to immediately consult Dr. George did not impact R 26's physical condition. The DAB accepted these assertions as true but held that they were not probative because "the issue of substantial compliance here is not

whether Senior Rehab[ilitation's] failure to increase R 26's feedings posed more than minimal harm, but whether the facility's failure to immediately consult with the physician, as required, had that potential given the resident's medical history and identified clinical risks."

The findings and conclusions of the DAB with regard to Senior Rehabilitation's substantial compliance with the physician consultation requirement in 42 C.F.R. § 483.10(b)(11)(i) are not arbitrary, capricious, in violation of the law, or unsupported by substantial evidence.

ii. *Pressure Sores, 42 C.F.R. § 483.25(c)(2)*

Senior Rehabilitation also appeals the DAB's determination that it did not substantially comply with the requirement regarding pressure sores. This requirement is part of the quality of care standards in 42 C.F.R. § 483.25, which compels a facility to "provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care." The subsection on pressure sores states, in pertinent part, "[b]ased on the comprehensive assessment of a resident, the facility must ensure that . . . [a] resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing." 42 C.F.R. § 483.25(c)(2).

██ The undisputed evidence shows that R 26 was at "high risk" for pressure sores. When R 26 was re-admitted to the facility after a hospital stay in January 2008, she had pressure sores on her coccyx and left inner knee. Between January and June 2008, the coccyx pressure sore worsened, and R 26 developed additional pressure sores. After a detailed and pains-

taking review of the record, the DAB concluded that Senior Rehabilitation had not substantially complied with the pressure sore requirement. Specifically, the DAB determined that Senior Rehabilitation (1) failed to conduct daily assessments of the pressure sores on R 26's coccyx and back as required by her care plan; (2) permitted R 26 to lie on a "wet incontinent pad with a drying brown ring and a foul urine odor" which violated R 26's care plan and the facility's own policies; and (3) did not ensure that R 26's catheter was functioning which violated R 26's care plan and the facility's policies. Based on this evidence, the DAB determined that Senior Rehabilitation did not "ensure" that R 26 "receive[d] necessary treatment and services to promote healing, prevent infection and prevent new sores from developing" and that this deficiency posed a greater than minimal risk to R 26's health.

Rather than offer argument or cite legal authority with respect the pressure sore requirement, Senior Rehabilitation merely copied and pasted portions of various affidavits previously submitted to the ALJ and the DAB into its brief to this court. However, the DAB carefully parsed each affidavit, accepted the statements as true, and arrived at the conclusion that Senior Rehabilitation was not in substantial compliance. This decision was not arbitrary, capricious, in violation of the law, or unsupported by substantial evidence.

iii. *Activities of Daily Living, 42 C.F.R. § 483.25(a)(iii)*

Senior Rehabilitation contests CMS's determination of substantial noncompliance with 42 C.F.R. § 483.25(a)(iii) for failure to provide timely incontinent care to several residents, including R 26. Having found that the Senior Rehabilitation's substantial noncompliance with 42 C.F.R. § 483.10(b)(11)(B) and 42 C.F.R.

§ 483.25(c)(2) was sufficient to support the imposition of the civil monetary penalty, the ALJ did not review this deficiency. Because Senior Rehabilitation identified no error by the ALJ, the DAB did not address this issue. The DAB's decision not to review this issue was not arbitrary or capricious. *See Claiborne–Hughes Health Ctr. v. Sebelius,* 609 F.3d 839, 847 (6th Cir.2010).

### iv. *Civil Monetary Penalty*

According to Senior Rehabilitation, the imposition of a civil monetary penalty of $800 per day, for a total of $35,200, was unreasonable. "Penalties in the range of $50–$3,000 per day are imposed for deficiencies that do not constitute immediate jeopardy, but either caused actual harm, or caused no actual harm, but have the potential for more than minimal harm." 42 CFR § 488.438(a)(1)(ii). In determining a penalty, CMS considers the following factors: (1) the facility's history of noncompliance, including repeated deficiencies; (2) the facility's financial condition; (3) the factors specified in [42 U.S.C.] § 488.404; and (4) the facility's degree of culpability. *Id.* at § 488.438(f). The factors in 42 CFR § 488.404 include the seriousness of the deficiency, the relationship among the deficiencies resulting in the noncompliance, and the facility's history of noncompliance in general and specifically with respect to the cited deficiencies. 42 CFR § 488.404.

The ALJ determined that a $800 per day civil monetary penalty was reasonable based on the facility's history of noncompliance and culpability. The ALJ relied upon undisputed evidence that Senior Rehabilitation was in its "sixth noncompliance cycle" and had previously failed to comply with the physician consultation requirement. The ALJ also assessed the facility's culpability based on the undisputed facts supporting the findings of non-

compliance under § 483.10(b)(11) and § 483.25(c)(2).

The DAB adopted the ALJ's conclusion that Senior Rehabilitation's history of noncompliance and culpability justified the $800 per day penalty. It also rejected Senior Rehabilitation's challenge to the duration of the penalty period—from June 2, 2008 through July 15, 2008—because Senior Rehabilitation had "not presented evidence that, prior to July 16, 2008, it implemented all of the measures necessary to ensure that similar violations of the participation requirements would not recur." In its brief before this court, Senior Rehabilitation merely recites the same arguments rejected by the DAB. The DAB's determination as to the reasonableness of the civil monetary penalty was not arbitrary, capricious, in violation of the law, or unsupported by substantial evidence.

For the foregoing reasons, the petition for review is **DISMISSED**.